# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAWN KNIGHT, on behalf of
P.K., a minor,

      Plaintiff,

vs.                                                                    No. CIV 12-0382 JB/LFG

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION, AND DISMISSING CASE

**THIS MATTER** comes before the Court on the Magistrate Judge's Analysis and Recommended Disposition, filed May 8, 2013 (Doc. 23)("A&RD"), proposing to deny the Plaintiff's Motion to Reverse and Remand for Payment on Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum, filed November 15, 2012 (Doc. 19)("Motion to Reverse and Remand"). This case involves Plaintiff Dawn Knight's April 19, 2007, application for benefits on behalf of her minor child, P.K., who was nine years old in 2007. Administrative Record at 147. After an ALJ hearing was held on June 23, 2010, the ALJ issued a decision denying Knight's application for benefits, having analyzed the case in accordance with the sequential evaluation used for children under the age of eighteen years. See Administrative Record 20-33.

## PROCEDURAL BACKGROUND

The Honorable Lorenzo F. Garcia, United States Magistrate Judge, set forth the procedural background of the case, standards for determining disability for children under eighteen, and a

detailed history of P.K.'s background, education, and medical treatment.  See A&RD at 1-34.

Judge Garcia then discussed Knight's allegations of error by the ALJ, evaluating evidence and

findings concerning the pertinent domains, e.g., "interacting and relating with others," "ability to

care for self," "acquiring and using information," and similar issues.  A&RD at 35-55.

Ultimately, the Judge Garcia found that the ALJ did not err and that substantial evidence supports

the ALJ's denial of benefits.

On May 21, 2013, Knight filed objections to Judge Garcia's recommendations in the

A&RD.  See Plaintiff's Objections to the Magistrate Judge's Analysis and Recommended

Disposition (Doc. 24)("Objections").  She identified at least twenty errors which she believes

Judge Garcia committed.  Judge Garcia required Defendant Commissioner Carolyn W. Colvin to

file a response to the objections, and Commissioner did so on June 4, 2013.  See Defendant's

Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendations (Doc.

26)("Response").  The Court conducted a de novo review of all of Judge Garcia's

recommendations and findings to which Knight objected.

### LAW REGARDING PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a magistrate judge for a recommended

disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the

required proceedings when assigned, without the parties' consent, to hear a pretrial matter

dispositive of a claim or defense . . . .").  Rule 72(b)(2) governs objections: "Within 14 days after

being served with a copy of the recommended disposition, a party may serve and file specific

written objections to the proposed findings and recommendations."  Finally, when resolving

objections to a magistrate judge's proposal, "the district judge must determine de novo any part of

the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.   A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute."  United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).   As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency."   One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  One Parcel, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal

questions.'"   One Parcel, 73 F.3d at 1059 (citations omitted).   In addition to requiring specificity

in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the

magistrate judge's recommendation are deemed waived."   Marshall v. Chater, 75 F.3d 1421,

1426 (10th Cir. 1996).   See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir.

2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report

are deemed waived.").   In an unpublished opinion, the Tenth Circuit stated that "the district court

correctly held that [a petitioner] had waived [an] argument by failing to raise it before the

magistrate."   Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).[1]

In One Parcel, the Tenth Circuit, in accord with other courts of appeals, expanded the

waiver rule to cover objections that are timely but too general.   See One Parcel, 73 F.3d at 1060.

The Supreme Court of the United States -- in the course of approving the United States Court of

Appeals for the Sixth Circuit's use of the waiver rule -- noted:

> It does not appear that Congress intended to require district court review of a
> magistrate's factual or legal conclusions, under a *de novo* or any other standard,
> when neither party objects to those findings.   The House and Senate Reports
> accompanying the 1976 amendments do not expressly consider what sort of review
> the district court should perform when no party objects to the magistrate's report.
> See S. Rep. No. 94-625, pp. 9-10 (1976) (hereafter Senate Report); H. R. Rep. No.
> 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter
> House Report).   There is nothing in those Reports, however, that demonstrates an
> intent to require the district court to give any more consideration to the magistrate's

---

[1] Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an unpublished opinion . . .   has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that Pevehouse v. Scibana has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

report than the court considers appropriate.   Moreover, the Subcommittee that
drafted and held hearings on the 1976 amendments had before it the guidelines of
the Administrative Office of the United States Courts concerning the efficient use
of magistrates.   Those guidelines recommended to the district courts that "[w]here
a magistrate makes a finding or <u>ruling</u> on a motion or an issue, his determination
should become that of the district court, unless specific objection is filed within a
reasonable time."   <u>See</u> Jurisdiction of United States Magistrates, Hearings on S.
1283 before the Subcommittee on Improvements in Judicial Machinery of the
Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975) (emphasis
added) (hereafter Senate Hearings).   The Committee also heard Judge Metzner of
the Southern District of New York, the chairman of a Judicial Conference
Committee on the administration of the magistrate system, testify that he
personally followed that practice.   <u>See</u> <u>id.</u>, at 11 ("If any objections come in, . . . I
review [the record] and decide it.   If no objections come in, I merely sign the
magistrate's order.").   The Judicial Conference of the United States, which
supported the <i>de novo</i> standard of review eventually incorporated in §
636(b)(1)(C), opined that in most instances no party would object to the
magistrate's recommendation, and the litigation would terminate with the judge's
adoption of the magistrate's report.   <u>See</u> Senate Hearings, at 35, 37.   Congress
apparently assumed, therefore, that any party who was dissatisfied for any reason
with the magistrate's report would file objections, and those objections would
trigger district court review.   There is no indication that Congress, in enacting §
636(b)(1)(C), intended to require a district judge to review a magistrate's report to
which no objections are filed.   It did not preclude treating the failure to object as a
procedural default, waiving the right to further consideration of any sort.   We thus
find nothing in the statute or the legislative history that convinces us that Congress
intended to forbid a rule such as the one adopted by the Sixth Circuit.

<u>Thomas v. Arn</u>, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not

be applied when the interests of justice so dictate.'"   <u>One Parcel</u>, 73 F.3d at 1060 (quoting <u>Moore</u>

<u>v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to

apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not

apprise the pro se litigant of the consequences of a failure to object to findings and

recommendations." (citations omitted)).   <u>Cf.</u> <u>Thomas v. Arn</u>, 474 U.S. at 154 (noting that, while

"[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask,"

a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard").   In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule.   See 73 F.3d at 1060-61 (citing cases from other circuits where district courts elected to address merits despite potential application of waiver rule, but circuit courts opted to enforce waiver rule).

Where a party files timely and specific objections to the magistrate judge's proposed findings and recommendation, "on [] dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing."   United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."   United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b) and citing Mathews v. Weber, 423 U.S. 261, 275 (1976)).   The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate's report.   In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995).   "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . .   the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing."   Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the magistrate's report "based upon conflicting evidence or testimony."   Gee v.

Estes, 829 F.2d at 1009.    On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order."   Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988).   A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record."    Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000). "[T]he district court is presumed to know that de novo review is required. . . .   Consequently, a brief order expressly stating the court conducted de novo review is sufficient."   Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84).   "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise."   Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).   The Tenth Circuit has previously held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion."   Garcia v. City of Albuquerque, 232 F.3d at 766.   The Tenth Circuit has explained that brief district court orders that "merely repeat the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis.   We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because "Congress intended to permit whatever reliance a district judge, in the

exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1).   See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the magistrate judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and   United States v. Raddatz require).

Where no party objects to the magistrate judge's proposed findings and recommended disposition, the Court has, as a matter of course and in the interests of justice, reviewed the magistrate judge's recommendations.   In Pablo v. Soc. Sec. Admin., No. CIV 11-0132 JB/ACT, 2013 WL 1010401 (D.N.M. Feb. 27, 2013)(Browning, J.), the Plaintiff failed to respond to the magistrate judge's proposed findings and recommended disposition, and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review.   The Court generally does not, however, "review the PF&RD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."   Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.   The Court, thus, does not determine independently what it would do if the issues had come before the Court first, when there is no objection, but rather adopts the proposed findings and recommended disposition where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."   Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.   See Alexandre v. Astrue, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. Feb. 27, 2013)(Browning, J.)("The

Court rather reviewed the findings and recommendations of the Honorable Stephan M. Vidmar, United States Magistrate Judge, to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., No. CIV 12-1125 JB/KBM, 2013 WL 1009050, at *5 (D.N.M. Feb. 28, 2013)(Browning, J.)(adopting the proposed findings and conclusions, and noting: "The Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not.").   This review, which is deferential to the magistrate judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review.   Accordingly, the Court considers this standard of review appropriate.  See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").   The Court is reluctant to have no review at all if its name is going at the bottom of the order adopting the magistrate judge's proposed findings and recommendations.

## ANALYSIS

Knight timely filed objections to the A&RD, and the Court therefore reviewed de novo those portions of Judge Garcia's A&RD to which Knight objects.   The Court agrees with Judge Garcia that substantial evidence supports the ALJ's findings.   The Court will therefore overrule Knight's objections to the A&RD.

**I.     THE COURT OVERRULES KNIGHT'S FIRST AND SECOND OBJECTIONS, BECAUSE THE COURT CONCLUDES THAT JUDGE GARCIA, IN THE A&RD, DOES NOT MISREPRESENT THE RECORD OR THE ALJ'S FINDINGS.**

Knight objects to the "misrepresentations of the record" that she describes as Judge Garcia's single mention that the ALJ found one marked limitation and "no severe limitations." Objections at 1 (quoting A&RD at 7)(internal quotations omitted).   Knight contends that a "severe limitation" is not a phrase at issue here, and that, instead, Knight was required to show that P.K. had an "extreme" limitation in one domain or a "marked" limitation in two of the domains. Objections at 1-2 (citing 20 C.F.R. § 416.926a(d)).   Thus, Knight objects to the phrase that Judge Garcia employed and contends it is error.

The Court agrees that Judge Garcia used the wrong language, but it is not a "misrepresentation," as Knight contends.   Judge Garcia stated: "Because the ALJ found a marked limitation in only one of the six domains and no severe limitations, the ALJ concluded P.K. was not functionally limited, and therefore, not disabled."   A&RD at 7 (citing Administrative Record at 28-32).   Based on all of Judge Garcia's subsequent analysis concerning extreme, marked and less-than-marked limitations, Judge Garcia inadvertently referred to a "severe limitations," when he intended to say that the ALJ found no "extreme limitations."   A&RD at 7.   The misstatement does not constitute error that requires reversal, and the Court accordingly overrules the objection.

Knight's second objection is to Judge Garcia's labeling of P.K.'s treating pediatrician, Dr. Carla Bloedel, as a "provider" rather than a treating doctor.   A&RD at 8.   Knight takes issue with Judge Garcia's "misidentification of the record at AR 254 as from a generic provider, when treating Dr. Bloedel authored it."   A&RD at 10.

The portion of Judge Garcia's recitation of medical history at issue states:

> On May 14, 2007, a Lovelace medical record noted that P.K. received special classes or tutoring in reading.  Her best subject was math.  According to this record, P.K. did not have problems with teachers, other students, friends, or her parents.  She rarely forgot her medications, and her school work was good as long as she took her medications.  Administrative Record at 253.  Her mood and ADHD were stable with the present medications.  Physician notes on the record appear to question whether P.K.'s moodiness was caused by early pubertal changes.  Administrative Record at 254.

A&RD at 10.  Knight apparently wanted Judge Garcia to specifically state that Dr. Bloedel, P.K.'s treating pediatrician, authored this record.  Judge Garcia's identification of Dr. Bloedel as a medical provider does not constitute "misidentification" of the doctor.  Knight's distinction is one that makes no difference.

The portion of the record to which Knight cites contains minimal notations by Dr. Bloedel. It indicates a fifteen-minute visit and contains the words: "stable ADHD moody, ?? early pubertal changes?"  Under the section "plans," Dr. Bloedel wrote: "cont Dexedrine + guanfascine as is." Administrative Record at 254.  The reference to a medical provider or a Lovelace medical record rather than to Dr. Bloedel, as a treating pediatrician, is of no significance.  Moreover, this is not a case where Knight raised challenges to treating physician findings by the ALJ in relation to Dr. Bloedel.  The Court finds no error and overrules the objection.

## II.   THE COURT OVERRULES KNIGHT'S THIRD OBJECTION, BECAUSE THE COURT CONCLUDES THAT JUDGE GARCIA CORRECTLY CHARACTERIZED E.B. HALL'S TREATMENT OF P.K.

Knight objects to Judge Garcia's alleged "mischaracterization of the records from treating psychiatrist E.B. Hall."  Objections at 2.  Knight argues that her opening brief set forth a chart summarizing Dr. Hall's records that contain his "findings and recitations of P.K.'s symptoms and problems."  Objections at 2.  Knight further states that Judge Garcia "appears to have ignored Ms. Knight's transcription of treating Dr. Hall's notes."  Objections at 2 n.1.  Knight describes

one of Dr. Hall's difficult-to-decipher records as stating P.K. drew bad pictures and then ripped them up, and notes that Judge Garcia read the note to say "when bites, draws blood [rest illegible]." A&RD at 23.   Knight contends that her transcription is correct.

In reviewing the record at issue, the Court agrees that Knight accurately deciphered part of Dr. Hall's record and that Judge Garcia was incorrect.   Knight does not, however, identify why this mistake constitutes legal error.   The Court, in its review of the record, is not convinced that Knight correctly transcribed all of Dr. Hall's difficult-to-read records.[2]   For example, Knight left out part of the record, because it was difficult or impossible to read.   See Motion to Reverse and Remand at 7 (citing chart date Feb. 2010).   The record may state "when writes, draws bad pictures/rips up pictures Seroquel is not working very dysfunctional mood swings are off the charts."   Administrative Record at 314.

To the extent that Judge Garcia made a mistake reading Dr. Hall's difficult-to-read handwriting, the mistake was not error that changes the conclusion.   The Court therefore overrules the objection to the transcription of Dr. Hall's record.

In addition, while not entirely clear, Knight may object to Judge Garcia's finding that Dr. Hall primarily engaged in medical management rather than providing therapeutic counseling to P.K.   In Knight's opening brief, for example, she argued that "[o]ut of 24 pages of Dr. Hall's records, more than 2/3s contain treatment notes and comments on P.K.'s well-being and symptoms."   Motion to Reverse and Remand at 6.

---

[2] The verb "to transcribe" means to "transliterate (foreign characters) or write or type out (shorthand, notes, or other abbreviated forms) into ordinary characters or full sentences." http://oxforddictionaries.com/us/definition/american_english/transcribe (last visited on 6/7/2013). The term transliterate gives the impression of accuracy, but it is impossible to transcribe Dr. Hall's records to a "t".   Moreover, Knight acknowledges in the chart that she cannot always read Dr. Hall's records.   See Motion to Reverse and Remand at 7 (citing chart date May 2009).

The Court concludes that Knight overstates the record with respect to Dr. Hall's progress notes, many of which are duplicated in the record.  See Administrative Record at 291-337.   Of the twenty-seven pages of Dr. Hall's unduplicated progress notes, at least sixteen pages consist only or primarily of copies of prescription forms.  Many of the records list prescriptions and dosages as opposed to documenting counseling.  See Administrative Record at 292, 293, 294, 295, 298, 299, 300, 301, 304, 305, 306, 308, 309, 312, 314, 317.   Another six of the twenty-seven pages, are "check-in" forms, not in Dr. Hall's handwriting, that appear to reflect reports to Dr. Hall's staff by P.K.'s mother.  See Administrative Record at 291, 296, 297, 303, 315, 316. Contrary to the impression that Knight's briefing gives, even where Dr. Hall includes written notes, with the exception of the initial consultation, these records contain minimal notations and sometimes just a string of words that do not indicate Dr. Hall provided counseling to P.K.  See, e.g., Administrative Record at 307 ("slam doors" "doing good in school" "ASS ADD" lists medications); Administrative Record at 304 ("threw a fit; BPII mother harder on them! un__ (illegible) lists medications); [3] Administrative Record at 304 ("sleep is good, grades are good stable __ (illegible) noncompliance with meds - off the wall - hyperactive, impulsive" lists medications); Administrative Record at 308 ("mood swings cont." lists medications); Administrative Record at 307 ("Trileptal helps sleep Teacher's feedback - okay in school wait [(or want?)] to see improvement noncompliant with meds negative attention then meds help[?] it"); Administrative Record at 312] ("daughter age 14 watches kids while mom works graveyard new boyfriend").

---

[3] Knight's attempted transcription of the records omits portions that apparently could not be read as well.  See Motion to Reverse and Remand at 7 (citing chart).

Knight's objections demonstrate a misunderstanding of the Court's role.   On review of an ALJ's decision, it matters not whether the Court would have found for a claimant.   Rather, the Court's limited function is to determine whether substantial evidence supports the ALJ's decision. In other words, the Court is prohibited from substituting its judgment for that of the fact finder. See, e.g., Cowan v. Astrue, 552 F.3d 1182, 1185 (10th Cir. 2008)(stating that court considers whether the ALJ followed required rules of law in weighing particular types of evidence in disability cases, but court cannot reweigh the evidence or substitute judgment for the Commissioner's)(internal quotation marks omitted); Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(only substantial, not compelling or incontrovertible, evidence is required to sustain an administrative agency's findings, at that, even if the court disagrees with the ALJ's assessments, it does not reweigh the evidence or substitute judgment for the ALJ); Murphy v. Astrue, 2012 WL 3898977, at *3 (D. Kan. Sep. 5, 2012)(unpublished)( that that the court's duty is not to usurp the role of the ALJ, even if the court disagrees with the decision, but rather to determine whether substantial evidence supports the ALJ's findings)(citation omitted).

Thus, the essential inquiry in assessing Knight's possible objections about treatment of Dr. Hall's opinions is whether substantial evidence supports the ALJ's finding that Dr. Hall's records sharply contrasted with other evidence of record that made his opinions less persuasive and of less evidentiary value.   See Administrative Record at 28.   The ALJ found that Dr. Hall's opinions "evidently relies heavily on subjective reports concerning areas outside the scope of his observation [during appointments]."   Administrative Record at 28.   See White v. Barnhart, 287 F.3d 903, 907-09 (10th Cir. 2002) (stating that the treating physician's opinion may be rejected if it appears that it is based on subjective complaints rather than objective medical evidence).

- 14 -

The Court concludes that the ALJ's decision to discount Dr. Hall's opinion was thoroughly explained and that substantial evidence supports that decision.  Moreover, Judge Garcia committed no error in how he characterized Dr. Hall's records or treatment.  The Court therefore overrules Knight's objection.

## III.  THE COURT OVERRULES KNIGHT'S FOURTH OJECTION, BECAUSE JUDGE GARCIA PROPERLY CONCLUDED THAT THE ALJ'S DECISION TO DISCOUNT DR. HALL'S OPINIONS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Knight objects to Judge Garcia's alleged "disparagement of the definitions on the form submitted to treating psychiatrist Hall."  Objections at 2.  Among other findings, Judge Garcia observed that the definitions on the check-off-the-box form, which Dr. Hall completed, lacked citations to authority.  A&RD at 24.  Knight states Judge Garcia "is wrong."  Objections at 3.  She further notes that each section of the "definitions" was taken from the Social Security's regulations regarding disability definitions, as she describes further in her objections.  The point is that Judge Garcia simply noted that the sources of the definitions were not clear, because the definitions on the form were without citations.

That problem, however, was not the only problem with the form that Judge Garcia observed.  The form begins by addressing Dr. Hall and stating: "As you probably know PATRICIA suffers from ADHD with psychotic features, Hearing Loss, Multiple Personality, Hallucinations."  Administrative Record at 361-62.  The requesting party -- unidentified -- then asks Dr. Hall to rate P.K. in the various domains.  See Administrative Record at 361-62.  As Judge Garcia noted, Dr. Hall marked the boxes but provided no further comment to justify the ratings.

Without responding to Judge Garcia's concerns about the form, and its unsupported allegations of symptoms of diagnoses of psychotic features, multiple personality, hallucinations, Knight takes issue with one small portion of Judge Garcia's discussion of the form.   The important question, however, is whether the ALJ properly discounted Dr. Hall's opinions set out in the functional questionnaire.   See Administrative Record at 27.   As Judge Garcia properly found, substantial evidence supports the ALJ's decision to discount Dr. Hall's opinions.   See A&RD at 39-40.   The Court thus finds no error and overrules the objection.

**IV.    THE COURT OVERRULES KNIGHT'S FIFTH AND SIXTH OBJECTIONS, WHICH OBJECT TO JUDGE GARCIA'S AND THE ALJ'S FINDING THAT P.K. HAS A MARKED LIMITATION IN INTERACTING WITH OTHERS, BECAUSE SUBSTANTIAL EVIDENCE SUPPORTS THE JUDGES' FINDINGS.**

Knight objects to Judge Garcia's finding regarding the ALJ's conclusion that P.K. had a marked limitation in the domain of interacting and relating with others.   She disputes that the ALJ's conclusion was supported by substantial evidence.   Part of the objection is based on Knight's position that Judge Garcia minimized the importance of Dr. Hall's check-off-the-box assessment of functioning.    Knight argues that the ALJ was required to give great deference to Dr. Hall's opinions. See Objections at 4.

Knight also objects to Judge Garcia's findings that the ALJ "thoroughly and appropriately discussed Dr. Hall's progress notes, adjustment of medications, and reports of P.K.'s troubling behavior."   Objections at 4.   She further challenges Judge Garcia's finding that the ALJ set forth an adequate rationale for assigning diminished evidentiary value to Dr. Hall's opinions on the check-off-the-box form.   Knight asserts that Dr. Hall's opinions on the form were entitled to controlling weight.

Judge Garcia did not commit error in his review of the ALJ's findings and conclusions, or in his determination that substantial weight supports the ALJ's determination.   The Court overrules all of these objections, having already discussed the form provided to Dr. Hall, including the form's inaccurate or unsubstantiated information.   The Court also determines that substantial evidence supports the ALJ's decision to assign less weight to Dr. Hall's opinions.

## V.   THE COURT OVERRULES KNIGHT'S OBJECTIONS NOS. SEVEN THROUGH SIXTEEN, BECAUSE SUBSTANTIAL EVIDENCE SUPPORTS JUDGE GARCIA'S CONCLUSIONS AND RECOMMENDATIONS.

Objection No. 7:

Knight's seventh objection takes issue with Judge Garcia's mention that she relied on Social Security Ruling ("SSR") 07-7p, when instead, Knight relied on SSR 09-7p.   Objections at 5.   Knight is correct that Judge Garcia's recommendations contain a typographical error; and correct that SSR 07-7p does not exist.

Judge Garcia cited SSR 07-7p [sic], noting its language that a teenager with a depressive disorder who seeks emotional comfort by engaging in self-injurious behaviors like "suicidal gestures" was an example of an inappropriate emotional response in this domain.   Instead of SSR 07-7p, SSR 09-7p sets out this example.   See Title XVI: Determining Childhood Disability -- The Functional Equivalence Domain of Caring for Yourself, SSR 09-7p. 2009 WL 396029, at *3 (Feb. 17, 2009).   While Judge Garcia's reference to SSR 07-7p was mistaken, it does not constitute error that provides the Court grounds to disagree with Judge Garcia's conclusion.   The Court overrules the objection.

Objection No. 8:

In her eighth objection, Knight objects to Judge Garcia's "attempt to distinguish <u>Moore v. Barnhart</u>, 366 F.3d 643, 652 (8th Cir. 2004) because the adolescent in that case had attempted suicide 'on multiple occasions.'"   Objections at 5 (citing A&RD at 42).   Knight argues that Moore was fifteen years old when the ALJ conducted a hearing, in contrast to this case where Knight was twelve at the time of the ALJ hearing.   Knight contends that Judge Garcia "essentially is penalizing P.K. for being too young to have made an actual suicide attempt."   Objections at 6.

In addition, Knight challenges Judge Garcia's findings as to this domain, because he cited no authority for finding that suicidal ideation by a young girl is not evidence of at least a "marked" impairment, <u>i.e.</u>, an impairment that "interferes seriously with [the child's] ability to independently initiate, sustain or complete activities."   Objections at 6 (citation omitted).   Knight argues that Judge Garcia erred, because substantial evidence does not support the ALJ's failure to find a "marked" impairment in this domain, based on P.K.'s suicidal ideation and inability to ask for help when she is ill.

The Court does not find error with Judge Garcia's distinction between this case and the United States Court of Appeals for the Eighth Circuit's decision in <u>Moore v. Barnhart</u>.   As Judge Garcia points out, the adolescent in in <u>Moore v. Barnhart</u> attempted suicide multiple times, whereas there was no evidence in the record that P.K. had ever attempted suicide.   <u>See</u> A&RD at 42.   Although it may be that a fifteen-year old has more opportunity to attempt suicide than a twelve-year old, notably, the administrative regulation regarding marked impairments, on which the Eight Circuit relied in <u>Moore v. Barnhart</u>, group together adolescents from ages twelve through eighteen. <u>See</u> <u>Moore v. Barnhart</u>, 366 F.3d at 652 (citing 20 C.F.R. Part 404, Subpart P, App. 1, § 112.00(C)(4)(discussing marked impairment in adolescents age twelve to eighteen)).   Given that

P.K. has not attempted suicide, given that the adolescent that the Eighth Circuit found to be markedly impaired in in Moore v. Barnhart had attempted suicide multiple times, and given that the administrative regulations group together twelve and fifteen year olds into the same group for marked impairment determinations, Judge Garcia did not err in distinguishing this case from Moore v. Barnhart.

Moreover, the key inquiry in reviewing an ALJ's decision is whether substantial evidence supports the ALJ's findings regarding limitations in this domain, given the record, including P.K.'s suicidal ideation.  The ALJ noted examples of difficulties in this domain, including children who engage in self-injurious conduct like suicidal thoughts or actions and self-inflicted injuries.  See Administrative Record at 31.  The ALJ acknowledged that P.K. needed prompting regarding bathing and brushing her teeth, but could perform such activities when told to do so. The ALJ also reviewed records from P.K.'s third grade teacher who identified some problems in this domain, while her fourth grade teacher assessed no limitations beyond an observation of mood shifts.  Moreover, the ALJ found that P.K.'s expressions of suicidal ideation were being addressed with therapy. Administrative Record at 32.

In his recommendations, Judge Garcia noted the ALJ's support for finding a "less-than-marked limitation in this domain."  A&RD at 41-42.  Knight's argument that P.K.'s ideation indicated an extreme impairment did not persuade Judge Garcia, or, in his view, put this case on all fours with Moore v. Barnhart, in part, because the authority Knight cited did not stand for that proposition.  In addition, Judge Garcia, like the ALJ, observed that Dr. Hall's opinions that P.K. had a "marked" limitation in this domain were based heavily on Knight's subjective

- 19 -

reports or about areas outside the scope of Dr. Hall's observation.   See A&RD at 42; Administrative Record at 28.

The Court concludes that Judge Garcia did not commit error and overrules the objection.

Objection No. 9:

Objection No. 9 is related to Knight's eighth objection.   Knight argues that Judge Garcia's reliance on 20 C.F.R. § 416.930(a) was error, because the ALJ did not cite this regulation in his decision, and, therefore, Judge Garcia improperly provided a post hoc justification for the ALJ's conclusion. See Objections at 7.

Judge Garcia mentioned that it was proper for the ALJ to consider whether medication or treatment could effectively reduce limitations.   While not citing legal authority for this proposition, the ALJ was of the same mind when he found that therapy was addressing P.K.'s expressions of suicidal ideation.   See Administrative Record at 32.

Moreover, Judge Garcia's discussion of well-established legal principles concerning the efficacy of medications and treatment is only one small part of his analysis of the evidence that supported the ALJ's findings in this domain.   The Court concludes that substantial evidence supports the ALJ's findings and conclusions.   The Court finds no error by Judge Garcia and overrules the objection.

Objection No. 10:

Knight objects to Judge Garcia's analysis of P.K.'s ability to take care of her personal needs.   More specifically, she objects that Judge Garcia noted that P.K.'s third-grade teacher did not state that P.K. had a "very serious problem."   Objections at 7.   Knight argues that Judge Garcia appeared to hold that he would reverse the ALJ only if Knight could show an "extreme"

- 20 -

impairment.   Objections at 7.   Judge Garcia did not say that was the statement, and there is no sound basis for Knight's assumption or speculation.

Judge Garcia stated the following in relation to Knight's argument:

> Knight observes that P.K's third grade teacher noted serious problems with her hygiene.   Indeed, this teacher rated P.K. as having serious problems in her ability to take care of personal hygiene and also, to care for her physical needs like eating and dressing.   However, the teacher did not rate those problems as severely as she could have, i.e., as presenting "very serious problems."   In addition, the teacher rated P.K. as having obvious problems in 5 of the 10 subcategories of this domain and has having slight problems in 3 subcategories.   She did not indicate "no problem" for any of the subcategories.

A&RD at 43.   The discussion of the third-grade teacher's assessment or observations of P.K. was both thorough and thoughtful.   Judge Garcia did not omit those evaluations that were more favorable to Knight's position.

Moreover, Judge Garcia discussed all of the relevant evidence in relation to the domain, noting that the ALJ stated he, too, had considered all of the evidence.   While Knight emphasized older information that supported her position, there was more recent information, for example, from P.K.'s fourth-grade teacher, that supported the ALJ's decision. A&RD at 45.

Judge Garcia acknowledged that there was some evidence to support an impairment in this domain, but also appropriately observed that its role was not to re-weigh the evidence or to substitute its own judgment for that of the ALJ/fact finder "even in difficult cases like this." A&RD at 49.   The Court agrees and determines that substantial evidence supports the ALJ's findings and conclusion in this domain.    The Court finds no error by Judge Garcia and overrules the objection.

Objection No. 11:

- 21 -

Knight objects to Judge Garcia's finding that the "ALJ's written decision, while perhaps not discussing each of the records relied upon by Knight in detail, indicates the ALJ considered all of the evidence."   Objections at 7.   Knight argues that, "issue by issue," she had shown the ALJ ignored relevant evidence.   As Judge Garcia added, the record must demonstrate that the ALJ considered all of the evidence, but the ALJ need not discuss every piece of evidence.   A&RD at 6 (citation omitted).

In this case, the ALJ stated he reviewed "all of the evidence."   Administrative Record at 23.   Moreover, Judge Garcia specified records on which the ALJ relied, e.g., the third- and fourth-grade teachers' responses to questionnaires, the intake form from Hogares Inc., the location at which she underwent therapy sessions, and the examining and non-examining physicians' reports, and Dr. Hall's records.   See A&RD at 45. The Court's review of the ALJ's decision and the administrative record confirms that substantial evidence supports the ALJ's findings and conclusion.   The Court finds no error by Judge Garcia and overrules the objection.

Objection No. 12:

Knight objects to Judge Garcia's use of the word "variable" in describing records regarding P.K.'s suicidal ideation and ability to care for herself.   Objections at 8 (citing Administrative Record at 45-46, 47).   Knight contends that Judge Garcia engaged in an improper analysis of "picking and choosing" from the record.

Judge Garcia's discussion of the record is extensive.   There is no sound basis or support for Knight's contention that Judge Garcia selected only favorable records in finding that substantial evidence supported the ALJ's findings.   Instead, Judge Garcia accurately reflected a number of inconsistencies in the record.   For example, in March 2007, Dr. Bloedel indicated that

P.K. had trouble remembering her medications and often forgot them.   In April, just a month later, P.K. was noted as rarely forgetting her medications and that they helped.   In May 2007, a medical record indicated P.K. rarely forgot her medications.   <u>See</u> A&RD at 45.   Another example of inconsistency in the record is a report indicating P.K. was on a behavior program, but teacher questionnaires did not reflect that they had instituted a behavior program for P.K.

Again, the key question is whether substantial evidence supports the ALJ's findings and conclusions as to limitations in this domain.   Like Judge Garcia, the Court concludes that substantial evidence supports the ALJ's decision.   The Court finds no error by Judge Garcia and overrules the objection.

<u>Objection No. 13</u>:

Knight objects to Judge Garcia's conclusion that the ALJ set forth substantial evidence to support his finding and committed no error.   Knight's position is that, while Judge Garcia's decision is long, "the section regarding this domain is a description of the records, with no analysis."   Objections at 8.   According to Knight, Judge Garcia failed to explain how evidence that P.K. was "doing well" on a few, isolated days outweighs evidence from Dr. Hall, P.K.'s teachers, the counselors at Hogares Inc., and Dr. Bloedel.

The Court disagrees with Knight's characterization of the record that there were only a few, isolated days when P.K. was described as doing well.   The ALJ thoroughly discussed the evidence, as did Judge Garcia.   Judge Garcia noted that there was evidence to support an impairment in this domain, but also found that, because the possible evidence supporting a more severe limitation was not "overwhelmed by other evidence in the record," substantial evidence supports the ALJ's finding.   A&RD at 49.   Thus, Judge Garcia properly declined to re-weigh the

evidence and substitute his opinion for that of the ALJ.   The Court finds no error by Judge Garcia and overrules the objection.

Objection No. 14:

Knight objects to Judge Garcia's failure to specifically address her argument that the ALJ did not discuss P.K's or her mother's testimony "in any meaningful way."   Objections at 9.   To the extent that Judge Garcia described the evidence, Knight contends this description does not cure the ALJ's error, as Judge Garcia engaged in post hoc justification that is prohibited.

Judge Garcia observed that the ALJ listened to testimony at the hearing by both Knight and P.K.   See A&RD at 53 (citing Administrative Record at 51, 65).   In addition, Judge Garcia noted that the ALJ made specific credibility findings.   See A&RD at 53.   The ALJ found that, after consideration of the evidence of record, the persistence and limiting effects of P.K.'s symptoms were credible to the extent they were consistent with the finding that P.K. did not have an impairment or combination of impairments that functionally equaled the listings for reasons the ALJ explained in detail. See Administrative Record at 27.

The Court does not agree with Knight's contention that Judge Garcia failed to address specifically her argument or that Judge Garcia improperly engaged in post hoc justification of the ALJ's findings.   The Court finds no error by Judge Garcia and overrules the objection.

Objection No. 15:

Knight objects to Judge Garcia's failure to address her claim that the ALJ erred when he minimized the impact of the Hogares Inc. records, because "the diagnoses given as a result of this assessment did not originate from an 'acceptable medical source' under the regulations."

- 24 -

Objections at 10.   Knight contends that Judge Garcia failed to discuss this "thoroughly developed issue" or to distinguish <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1301-02 (10th Cir. 2007).

Contrary to these contentions, Judge Garcia discussed Knight's position regarding the ALJ's treatment of the Hogares Inc. records.   For example, Judge Garcia expressly acknowledged Knight's position that "the ALJ improperly minimized the impact of the Hogares Inc. records and committed error when he determined that the Hogares Inc. diagnoses did not originate from an "acceptable medical source" under the regulations.   A&RD at 44. But Judge Garcia observed that Knight agreed that the counselor who completed the Hogares Inc. intake form was not an "acceptable medical source" for purpose of a diagnosis.   A&RD at 44.

The Hogares Inc. intake form was the only Hogares Inc. record before the ALJ.   <u>See</u> Administrative Record at 28.   The ALJ mentioned the therapist at Hogares who took the intake assessment, but further noted he did not have any actual therapy records.   <u>See</u> Administrative Record at 28.   The Hogares Inc. therapy records were presented to the Appeals Council later. The Appeals Council, however, denied the request for review.

Judge Garcia discussed the Hogares Inc.'s therapy records in detail.   <u>See</u> A&RD at 48-49. Many of the therapists' notes indicate that the information obtained was from reports by Knight. Moreover, the Hogares Inc. interviewer/therapist, as Judge Garcia noted, observed that the historical data, as Knight reported, was inconsistent.   <u>See</u> A&RD at 48.   Judge Garcia further observed that much of the information provided in the Hogares Inc. records was not extensive and appeared "primarily to reflect the family's crisis situation in terms of being homeless at points, Knight losing her job, and the children attempting to protect their mother."   A&RD at 48.

Substantial evidence thus supports the ALJ's findings that the Hogares Inc. interviewer's diagnoses did not originate from an "acceptable medical source."   In addition, Knight agreed that the intake counselor was not an acceptable medical source.   The Court therefore finds that Judge Garcia did not err, and overrules the objection.

## VI.   THE COURT OVERRULES KNIGHT'S SEVENTEENTH OBJECTION, BECAUSE SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S CONCLUSION THAT P.K. IS DEFICIENT IN READING SKLLS BUT OVERALL IS ADVANCING ACADEMICALLY.[4]

Knight objects to Judge Garcia's alleged "complete failure to analyze her alleged error that the ALJ's entire analysis of the domain of acquiring and using information is found in the following sentence: 'P.K. is deficient in reading skills but overall is advancing academically in an age appropriate manner.'"   Objections at 10 (citing Administrative Record at 29). Knight contends that Judge Garcia erred by finding that the ALJ's analysis was appropriate, because it "should not be isolated from his analysis of the records preceding the discussion of the specific six domains."   A&RD at 49.   Knight refers to Judge Garcia's discussion of the evidence as improper post hoc rationale, and further contends that with respect to the ALJ's discussion, it was neither accurate nor complete. Objections at 11.

But the Court concludes otherwise.   The ALJ found that P.K. had a "less-than-marked" limitation in this domain.   See Administrative Record at 29.   The ALJ noted that the record demonstrated P.K. was deficient in reading skills, but overall, was advancing academically at an age appropriate manner.   See Administrative Record at 29.   In discussing the record, the ALJ considered reports from P.K.'s teachers, including a 2009 report that P.K. had no trouble in the

---

[4] Knight appears to have misnumbered the objections.   The objections skip No. 16 and proceed from No. 15 to No. 17.   See Objections at 10.

domain of acquiring and using information, and in which the teacher stated P.K. did very well in the classroom.   See Administrative Record at 28, 232, 234.   The ALJ also considered the report of P.K.'s fourth-grade teacher, who stated that P.K. completed her homework and handled her daily responsibilities "pretty well" when taking medication. [AR 27-28.]

The Court concludes that Judge Garcia did not err in his evaluation of the ALJ's findings in this domain and, further, that substantial evidence supports the ALJ's findings and conclusion. The Court overrules the objection.

## VII.   THE COURT OVERRULES KNIGHT'S EIGHTEENTH AND NINETEENTH OBJECTIONS, BECAUSE SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S CONCLUSION THAT P.K. WAS ATTENDING AND COMPLETING TASKS.

Objection No. 18:

Knight objects to Judge Garcia's finding that Knight isolated parts of the record to support her claim that the ALJ erred in finding a less-than-marked impairments in this domain. Objections at 12 (citing A&RD at 50).   Knight takes issue with Judge Garcia's discussion of the evidence, particularly the 2009 records which showed P.K. had a serious problem in only one subcategory out of thirteen.   A&RD at 51.   Knight emphasizes that the teacher reported the "serious" problem P.K. had in working at a reasonable pace and completing work on time and, that this occurred daily.   Objections at 12.   Knight surmises that Judge Garcia improperly required a showing of serious problems in thirteen of thirteen subcategories of this domain.   Knight misstates Judge Garcia's analysis.

Judge Garcia, for example, discussed the ALJ's review of pertinent regulations and definitions for this domain, and the ALJ's conclusion that, while P.K. had some problems, she made "good grades and usually complete[d] her assignments."   A&RD at 50.   According to the

record, as the ALJ notes, P.K. could follow directions and organize her responsibilities at school when she was taking her medications.   <u>See</u> Administrative Record at 29.

Judge Garcia found significant the 2009 questionnaire by the fifth grade teacher, because it was the only record that year that specifically addressed this domain.   It was that teacher who observed either no problems or slight problems in ten of thirteen subcategories.   <u>See</u> A&RD at 51. The ALJ also discussed the fifth grade teacher's questionnaire in detail.   <u>See</u> Administrative Record at 28.

Judge Garcia observed that Knight emphasized and highlighted portions of the record that supported her position.   At times, in the objections, Knight accuses Judge Garcia of the same thing.   There is variability in the record.   The Court must, however, resist the temptation to substitute its opinion, reweigh the evidence, and arrive at a different conclusion than that of the ALJ.   The law does not allow that approach.   Indeed, part of the reason behind that principle is that the ALJ is the fact finder who can directly assess the witness' credibility during the administrative hearing.   The Court does not have the same "bird's eye" view of the evidence and testimony that is before the ALJ:

> ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

<u>White v. Barnhart</u>, 287 F.3d 903, 910 (10th Cir. 2011).   The Court concludes that substantial evidence supports the ALJ's findings and conclusion.   The Court finds no error by Judge Garcia and overrules Knight's objection.

<u>Objections No. 19</u>:

- 28 -

Knight again objects to Judge Garcia's finding that the ALJ properly discounted Dr. Hall's opinions.   For the same reasons already discussed, the Court overrules the objection and finds that the ALJ properly set out his rationale for assigning less weight to Dr. Hall's opinions.

## VIII.  THE COURT DISMISSES KNIGHT'S TWENTIETH OBJECTION, BECAUSE SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S HEALTH AND PHYSICAL WELL BEING DETERMINATION.

Knight objects to Judge Garcia's finding that the ALJ properly found her impairment in this domain to be less-than-marked.   Knight argues that Judge Garcia "appears to require that P.K. show that the treatment of her hearing loss is ineffective before finding a marked impairment." Objections at 13.   She argues that, in addition to hearing loss, the records shows that P.K. suffers from bipolar disorder that causes suicidal and anger issues, and further that ADHD causes reading and concentration problems.   Objections at 13.   Knight asserts that Judge Garcia did not discuss her contention that the ALJ was required to analyze the impact of P.K.'s hearing loss and mental impairments when considering the "whole child." Objections at 13 (citing SSR 09-01p).

In his written decision, the ALJ made the following findings in determining that P.K. had a less-than-marked limitation in the health and physical well-being domain.

> [P.K.] is under significant family stress related to a recent eviction [from the home] and job loss [of her mother].   She wears a hearing aide regularly but she does not frequently miss school due to illness.   [P.K.] receives medication management, and more recently, behavior therapy, but does not have any significant somatic complaints related to her impairments or limitations in physical functioning due to treatment, therapy, or a need for intensive medical care.

Administrative Record at 32.

Judge Garcia acknowledged Knight's arguments in relation to this domain, including her position concerning P.K.'s hearing loss, Dr. Hall's check-box ratings in March 2010, and the

cumulative effects of physical and mental impairments that Knight argued supported a marked limitation.  See A&RD at 51.

Judge Garcia further noted that it was appropriate for the ALJ to consider the treatment a claimant receives in relation to impairments and the efficacy of that treatment.  See e.g., Pacheco v. Sullivan, 931 F.2d 695, 697-98 (10th Cir. 1991)(holding that impairment which medication can control is not a disability).  The record demonstrated, as the ALJ notes, that P.K. wore a hearing aid, still attended classes, was not in special education classes, and continued to progress through her grade levels.

Judge Garcia's failure to specifically discuss each and every argument by Knight does not amount to error that counsels that the Court should not accept Judge Garcia's conclusion.  The question is whether substantial evidence supports the ALJ's findings.  Based on his written decision, the ALJ considered P.K. and the effect of her mental and physical limitations, including hearing loss, medication and behavioral management, and stress level at home.  The Court concludes that substantial evidence supports the ALJ's findings in this domain.  The Court finds no error by Judge Garcia and overrules the objections.

## IX.   THE COURT WILL OVERRULE KNIGHT'S OBJECTIONS TO JUDGE GARCIA'S OTHER ALLEGED ERRORS.

Knight sets forth three additional areas of objections: (I) 20 C.F.R. § 416.913(c)(3) requires the ALJ to consider that P.K. received special accommodations not available to other children in the class room, e.g., being allowed to take class work home, receiving special instructions from teachers; (ii) the ALJ made no credibility determinations regarding Knight's testimony as to P.K.'s limitations; and (iii) the ALJ was required to ascertain which areas of functioning were

- 30 -

problematic for P.K., including a review of what P.K. did at home, school, and in her community. See Objections at 14-16.

In support of these areas of objections, Knight further alleges that Judge Garcia's recommendations failed to mention or discuss pertinent authority, or provide specific discussion of Knight's position.   Knight argues that Judge Garcia "completely omitted discussion of relevant case law and several controlling regulations and rulings."   Objections at 16.

After its de novo review of Knight's objections, the Court finds no basis to modify, amend, or reject Judge Garcia's opinion.   Judge Garcia carefully and thoroughly evaluated each of Knight's arguments, and was not persuaded.   See A&RD at 52-54.   The Court finds no error by Judge Garcia and overrules Knight's three additional areas of objections.

Like Judge Garcia, the Court notes that the record submitted in support of P.K.'s applications for benefits presents conflicting evidence.   It is not this Court's function, however, to "reweigh the evidence or substitute our judgment for the Commissioner's."   Cowan v. Astrue, 552 F.3d at 1185.   And to do so is impermissible.   The Court finds that ALJ's findings and conclusions were reasonable and consistent with the evidence.   See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(holding that court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). Even if the evidence could support a finding contrary to that of the Commissioner's, the Court cannot displace the agency's choice between two fairly conflicting views.   See Oldham v. Astrue, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

In conclusion, after a de novo review of those portions of Judge Garcia's recommendations to which Knight objects, the Court concludes that Judge Garcia did not commit legal error

requiring rejection or modification of his recommendations.  Any errors or mistakes made by Judge Garcia are harmless.[5]  The Court further determines that substantial evidence supports the ALJ's findings and conclusions with respect to P.K's impairments in each of the domains and that the ALJ applied the proper legal standards in denying Knight's application for benefits under the Social Security Act.

**IT IS ORDERED** that: (i) Plaintiff's Objections to the Magistrate Judge's Analysis and Recommended Disposition (Doc. 24), are overruled; (ii) the Magistrate Judge's Analysis and Recommended Disposition, filed May 8, 2013 (Doc. 23)("A&RD"), are adopted; and (iii) the Plaintiff's Motion to Reverse and Remand for Payment on Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum, filed November 15, 2012 (Doc. 19)("Motion to Reverse and Remand")m is denied; and (iv) Plaintiff Dawn Knight's Complaint, filed April 13, 2012 (Doc. 1), and this matter, are dismissed, with prejudice.

_____
UNITED STATES DISTRICT COURT

*Counsel:*

Michael D. Armstrong
Francesca J. MacDowell
Michael Armstrong Law Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

---

[5] See Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing applicability of harmless error application in the administrative review setting and noting cases reasoning that certain technical errors are "minor enough not to undermine confidence in the determination of th[e] case[,]" but also recognizing circumstances when harmless error principle is not appropriate) (citation omitted).

Kenneth J. Gonzales
 United States Attorney
Manuel Lucero
 Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

--and--

Brock Cima
Office of the General Counsel
Social Security Administration
Dallas, Texas

   *Attorneys for the Defendant*